**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **EFRAIN RIVERA-HERNANDEZ; YESENELYS FAJARDO-FIGUEROA and; the CONJUGAL PARTNERSHIP BETWEEN RIVERA-HERNANDEZ AND FAJARDO-FIGUEROA** | CIVIL NO. 16-1092 |
| PLAINTIFF | DISCRIMINATION BASED ON AGE, WRONGFUL TERMINATION (SEVERANCE PAY), AND TORT DAMAGES |
| VS. | |
| **LA CADENA DEL MILAGRO, INC.; TOMAS FIGUEROA; JEANETTE JIMENEZ; INSURANCE COMPANY XYZ; COMPANY ABC; JOHN & JANE DOE.** | TRIAL BY JURY DEMANDED |
| DEFENDANTS | |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW, Efrain Rivera-Hernandez, Yesenelys Fajardo-Figueroa and the conjugal partnership they constitute,** through the undersigned attorneys and very respectfully states, alleges and prays as follows:

**PRELIMINARY STATEMENT**

1.      Efrain Rivera-Hernandez (hereinafter referred as "Plaintiff" and/or "Mr. Rivera"), who is 59 years old, worked for La Cadena Del Milagro, Inc. (hereinafter referred to as "CDM") since approximately October of 1994, until his discriminatory constructive termination on June 29th, 2015. Plaintiff dedicated most of his life as a sales representative and Manager for CDM, creating and establishing the Sales Department for CDM which it did

not exist by the time he was hired in 1994. After establishing the Sales Department, Plaintiff became Manager of the Sales and Marketing Department on 1995. Plaintiff was the employee in the sales department with the highest seniority at the time of his discriminatory constructive termination on 2015. CDM created a hostile work environment for the Plaintiff, after demoting the Plaintiff, and eventually taking other adverse actions against the Plaintiff while not applying the same to others. Plaintiff lodged various internal complaints within CDM, alleging that he was being discriminated. CDM did not investigate or take any other corrective actions as to the same. Due to the adverse actions and CDM's lack of corrective actions, Plaintiff thus was forced to resign. Plaintiff submitted his resignation letter involuntarily, thus constituting a constructive dismissal, based on the fact that he was discriminated for his age.

2.      Such actions constitute a disparate treatment by the Defendants, based on age discrimination.

3.      Plaintiff files this civil action against CDM, Tomas Figueroa, and Jeanette Jimenez (hereinafter referred collectively as the "Defendants") based on the following: discrimination based on Age pursuant to the Age Discrimination in Employment Act, 29 USC sec. 621 *et seq.*, Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.*; and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a *et seq.*; and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

4.      In addition, Plaintiff's wife Yesenelys Fajardo-Figueroa files this civil action against the Defendants based on Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

5.      Plaintiff seeks compensatory, punitive, double and liquidated damages, severance pay, back pay, front pay, and equitable and injunctive relief for Defendant's unlawful and discriminatory employment termination of the Plaintiff on the basis of his age. In addition, Plaintiff seeks other specific remedies that restore him to the position that he would have held in the absence of discrimination.

## JURISDICTION AND VENUE

6.      The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to the Age Discrimination in Employment Act (hereinafter referred as "ADEA").

7.      Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico constitutional and law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action pursuant to Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. Law 100 of June, 30, 1959, 29 LPRA sec. 146 et seq.; P.R. Law 80 of May 30, 1976, 29 LPRA sec. 185 *et seq*, and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

8.     Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district and the defendant resides within this judicial district.

9.     Before filing this instant case, Plaintiff filed timely charges of discrimination on the basis of age before the state Fair Employment-Practice Agency (hereinafter referred to as "FEPA") within one hundred and eighty (180) days and/or three hundred (300) days after the adverse employment action. Notice of Right to Sue from the EEOC was received by the Plaintiff. Plaintiff thus filed this timely Complaint within ninety (90) days of receipt of the EEOC's Notification of Right to Sue.

10.     Plaintiff demands that all causes of action be tried before a jury.

PARTIES

11.     Plaintiff, Efrain Rivera-Hernandez, is of legal age, married, domiciled and resident of Camuy, Puerto Rico. Plaintiff is over forty (40) years of age. At the time of Plaintiff's termination of his employment with Defendants, he was 58 years of age. The Plaintiff was married to Mrs. Fajardo at the time of his termination, and they presently compose a conjugal partnership between them.  Plaintiff's postal address is PO Box 655, Camuy, PR 00627.

12.     Yesenelys Fajardo-Figueroa (hereinafter referred as "Ms. Fajardo"), is of legal age, married, domiciled and resident of Camuy, Puerto Rico. At the time of Plaintiff's termination, Mrs. Fajardo was married with the Plaintiff. The Plaintiff and Mrs. Fajardo presently compose a conjugal partnetship between them. Mrs. Fajardo's postal address is PO Box 655, Camuy, PR 00627.

13.     The conjugal partnership Rivera-Fajardo is a party with interest

14.     Defendant, La Cadena del Milagro, Inc. (hereinafter referred as "CDM") is a Non Profit Corporation organized and duly authorized to do business under the laws of the Commonwealth of Puerto Rico. The company is formed for the purpose of broadcasting family oriented programming. The company has a postal address which is P.O. BOX 949, Camuy, PR 00627.

15.     Co-Defendant Tomas Figueroa (hereinafter referred as "President" and/or "Mr. Figueroa"), is the President of CDM. His current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However his current postal address which is P.O. BOX 949, Camuy, PR 00627.

16.     Co-Defendant Jeanette Jimenez (hereinafter referred to as "Mrs. Jimenez") is the employee who harassed the Plaintiff. Her current personal address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered. However her current postal address which is P.O. BOX 949, Camuy, PR 00627.

17.     Co-Defendant, Insurance Company XYZ (hereinafter referred to as "Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the discriminatory incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants, specifically to cover said discriminatory claims. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

18.     Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the Defendants, that directed and had knowledge of Defendants' discriminatory acts of which

Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

19.     Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

## THE FACTS

20.     Plaintiff worked for CDM since approximately October of 1994, until he was forced to resign, constituting a constructive termination on June 29th, 2015.

21.     CDM is a non-profit company dedicated for the purpose of broadcasting family oriented television programming.

22.     CDM has been in existence for approximately 30 years, and has an audience of approximately more than one million ranging from adults and children.

23.     Presently, CDM has approximately 60 employees.

24.     Plaintiff started working with CDM on approximately October of 1994, when he was recruited by the then-president, Mr. Jose "Yiye" Avila (hereinafter referred as "Mr. Avila").

25.     Mr. Avila, on behalf of CDM, recruited the Plaintiff and gave him the task to create and build the Sales and Marketing Department of CDM.

26.     A few months after the Plaintiff successfully established the Sales Department, CDM named the Plaintiff Manager of the Sales and Marketing Department. After the Plaintiff was named Manager of the Sales and Marketing Department, the Plaintiff

took it upon himself to expand the Sales and Marketing Department and subsequently recruited more sales representatives. During the course of his Position as Manager, the Plaintiff recruited approximately 6 employees.

27.     During his term as Manager of the Sales and Marketing Department, from mid 1990s to mid 2000s, the Plaintiff enjoyed positive evaluations and never received negative complaints from his clients, employees and/or supervisors.

28.     The Plaintiff helped CDM expand and grow during his approximate decade long work as Manager of the Sales and Marketing Department.

29.     In addition to his work as Manager of the Sales and Marketing Department, the Plaintiff was also working as a sales representative, negotiating sales contracts with many different clients of CDM. The Plaintiff was well respected by his clients. Through his sheer work performance, Plaintiff was able to acquire new clients for CDM, and achieved record sales compared to other sales representatives. Plaintiff had a good reputation with his then-current clients, which earned him new clients in the future.

30.     Between all the sales representatives, the Plaintiff executed more sales agreements on behalf of CDM when compared to the others in the Sales Department. This created resentment amongst sales representatives and other officials of CDM.

31.     The Plaintiff was surprised by a sudden demotion made by CDM in the mid 2000s. The Plaintiff was spontaneously summoned by some members of the Board of Directors of CDM, members who also are Officials of CDM. In that meeting, which Mr. Figueroa led, the Plaintiff was summarily demoted from his role as Manager of the Sales and Marketing Department without any justification whatsoever.

32.     At the end of the meeting, the Plaintiff was informed by Mr. Figueroa that he will be demoted from his Manager position. There was no Board vote or Official meetings to discuss the reasons whatsoever as to this decision. This decision was taken by Mr. Figueroa, who was then Vice-President of CDM. Mr. Figueroa told the Plaintiff that he will demote the Plaintiff from Manager of the Sales and Marketing Department to a mere sales representative.

33.     In order that the Plaintiff will not make a ruckus or file any complaint against CDM because of his demotion, Mr. Figueroa indicated to the Plaintiff that if he accepted the demotion without any fight, CDM will recognize and respect Plaintiff's current benefits and salaries that he enjoyed as Manager in CDM.

34.     After hearing Mr. Figueroa's promise that he would not affect the Plaintiff's salaries and benefits, the Plaintiff angrily accepted the demotion because there was no justification for his demotion. The Plaintiff felt he had no other option other to accept what Mr. Figueroa offered, and expect that Mr. Figueroa would at least respect his current benefits and salaries.

35.     CDM respected the Plaintiff's salaries and sales commissions. However, CDM did not respect his benefits. Plaintiff complained with the Head of Accounting, Mr. Santiago (hereinafter referred as "Mr. Santiago"), demanding that they pay his benefits. Mr. Santiago told the Plaintiff they were working on it. However, CDM never respected his benefits. The Plaintiff did not have the benefits for more than 10 years, until his forced resignation in 2015.

36.     After the Plaintiff was demoted, he was immediately removed from the work area of the Department of Sales and Marketing of CDM.

8

37.     Plaintiff was left out in the street, without any place to report for approximately 2 years. Plaintiff worked as if he was a freelance salesman without any assistance from CDM, while the other sales representatives enjoyed the benefits of having a work area and other work instruments at CDM. Plaintiff had not Supervisor at that time.

38.     After Plaintiff was working for approximately 2 years outside the work area of CDM, Plaintiff was called by Mr. Esteban Paredes, the General Manager of CDM (hereinafter referred as "Manager" and/or "Mr. Paredes").   Mr. Paredes informed the Plaintiff, that he was ordered by Mr. Figueroa to call the Plaintiff and tell him that he now had to report to the General Manager, who was going to become the Plaintiff's new supervisor. This struck as odd for the Plaintiff, because the Plaintiff never heard of a sales representative working with the General Manager. Notwithstanding, the Plaintiff told the Manager that he understood the order and he would report to him then. After this phone call the Plaintiff was placed in a different area, while the rest of the sales representatives stayed in the area of the Sales and Marketing Department. Mr. Figueroa moved the Plaintiff to the office of the Manager, where he was without a personal office space for quite some time. The Plaintiff would report to Mr. Paredes and subsequently leave the facilities of CDM. Later, Mr. Figueroa placed the Plaintiff in a cubicle next to the Manager, where the Plaintiff only had a desk but did not enjoy the same work instrument benefits that other sales representatives of CDM enjoyed.

39.     After the Plaintiff was given no explanation for his demotion from the Management position, months later the Plaintiff later acquired knowledge that CDM recruited a much younger person, by the name of Mr. Jose Davila (hereinafter referred as

"Mr. Davila"), as the new Manager of the Sales and Marketing Department. At that time, Mr. Davila was approximately in his late 20s and early 30s.

40.     After Mr. Davila was assigned as the new Manager of the Sales and Marketing Department, the Plaintiff kept working as a sales representative. However, Plaintiff did not report to Mr. Davila because the head of CDM had left the Plaintiff outside the CDM work area for approximately two years.

41.     The Plaintiff felt discriminated by the fact that Mr. Figueroa demoted him without any justification, separated him from the Sales and Marketing Department area, left him to work by himself as a sales representative and eventually replaced him with a substantially younger substandard employee, Mr. Davila.

42.     In fact, Mr. Davila was not able to cope with his duties as Manager of the Sales and Marketing Department and eventually was fired from his post shortly thereafter.

43.     After the Plaintiff's demotion as Manager of the Sales and Marketing Department, the Sales and Marketing Department suffered losses. Subsequent managers, have not been able to emulate the same success as the Plaintiff.

44.     The Plaintiff was treated differently from other sales representatives in that the Plaintiff initially did not have a supervisor, did not enjoy the work space and instruments of CDM and he was forced to work outside CDM for approximately 2 years. The Plaintiff again was treated differently from other sales representatives when he was ordered to report directly to the Manager, which the other sales representatives did not do, and when he was moved to a different office area with the lack of work instruments.

45.     Plaintiff felt isolated and in a limbo for a long time, because CDM had the intent to create a negative workplace environment for the Plaintiff, so that he would eventually be forced to resign.

46.     Mr. Figueroa took discriminatory action against the Plaintiff, by not only demoting the Plaintiff, but not recruiting the Plaintiff for the same Manager position that the Plaintiff held prior to his illegal demotion after Mr. Davila was fired.

47.     Even though the Plaintiff felt discriminated because of the hostile work environment created by Mr. Figueroa, isolating him outside of CDM and eventually bringing the Plaintiff to a different area which was separate from the sales department, the Plaintiff did not lodge any complaints at the moment because he wanted to continue working as CDM's sales representative. The Plaintiff feared that if he lodged complaint, CDM would fire him. At the same time, the Plaintiff was hoping that the workplace environment was going to improve eventually.

48.     Plaintiff never received an Employee Manual of CDM.

49.     Plaintiff never signed a written contract with CDM.

50.     Plaintiff was rarely given training and/or instructions with regards to complaints and grievances of CDM.

51.     CDM, via the actions of Mr. Figueroa, continued to create a hostile work environment for the Plaintiff, by isolating him and not providing him with the Sales Department resources and instruments so that the Plaintiff would be able to do his job adequately.

52.     At times, other sales representatives kept questioning and doubting the Plaintiff's sales contracts, requiring Mr. Paredes to constantly ask the Plaintiff about his

sales contracts. On the other hand, the other sales representatives that worked in the Department of Sales did not get questioned whenever they executed sales contracts.

53.     Specifically, Mrs. Jeanette Jimenez was the sales representative who started to incur in these discriminatory actions against the Plaintiff.

54.     Because of the negative work environment, Plaintiff took the decision to go out to the street more often than usual. The Plaintiff used to go out to the street to find new clients and execute sales agreements. However, because of the negative work environment, Plaintiff started to go to the street at a more frequent pace and for longer hours in order to evade the discriminatory actions of Mr. Figueroa and other sales representatives.

55.     Despite the negative work environment, Plaintiff continued working as the "Sales Representative" for CDM until 2015. Plaintiff refused to resign because he hoped that Plaintiff's work environment would improve. However, the work environment worsened.

56.     Mr. Figueroa became the official President of CDM after Mr. Avila passed away, on approximately 2012. However, Mr. Figueroa was running CDM as a de facto President for approximately 10 years because of Mr. Avila's deteriorating condition.

57.     After the Plaintiff's demotion, Mr. Figueroa gave other employees the same faculties as sales representatives, disguised as other employees. Specifically, Mrs. Jimenez, who was hired as an assistant in the Sales and Marketing Department, began to earn sales commissions by participating as a sales representative.

58.     Mrs. Jimenez was substantially younger and substandard when compared to the Plaintiff.

59.     Mrs. Jimenez would make fun of the Plaintiff based on his age, constantly making offensive comments. Said commentaries ranged from: "eres calvo", "eres barrigon"

"te está poniendo Viejo y Calvo". ("you are balding", "you are big-bellied" and "you're getting old and bald.")

60.    As examples of Plaintiff's hostile work environment, the Plaintiff suffered the following:

a.  The Plaintiff was constantly mocked by Mrs. Jimenez, who continued saying that the Plaintiff was becoming old and fat. Mrs. Jimenez continued mocking the Plaintiff saying that he was also becoming old and bald.

b.  During the Plaintiff's time working at CDM, Mrs. Jimenez would never give the Plaintiff a certain report that must be given to other sales representatives. These reports contained information of each sales representative's client accounts that had debts that needed to be collected. Mrs. Jimenez had access to all these reports concerning all clients, which included Plaintiff's clients. However, Mrs. Jimenez delivered these reports to all the other sales representatives, but never delivered these reports to the Plaintiff.  There was no justification for the Plaintiff not receiving these reports, when Mrs. Jimenez had information of Plaintiff's clients. Plaintiff was thus forced to collect debts by himself, without benefitting at all from the work area and instruments.

c.  Mr. Figueroa told the Plaintiff that he was becoming old because he was forgetting everything.

d.  Mr. Figueroa told the Plaintiff that if he has not saved any money at his old age he is in big trouble.

13

e.   The Plaintiff heard from another sales representative that Mr. Figueroa was going to eliminate the salaries of a few select Sales Representatives, but that other Sales Representatives were still going to enjoy their salary. Mr. Figueroa was going to eliminate the salary to the old sales representatives and base their earning on commissions only. Meanwhile younger sales representatives were going to keep their salaries and commissions.

f.   Mr. Figueroa also treated the Plaintiff with disrespect whenever a meeting was held to discuss a report with the sales representative. Mr. Figueroa would always raise his voice and offend the Plaintiff, whereas he did not do the same to the other younger sales representatives. Mr. Figueroa continued creating a hostile work environment to the Plaintiff, continuously offending the Plaintiff in the sales representative meetings while treating other sales representatives with respect.

61.   The Plaintiff finally complained about these offensive comments, within the last few years prior to 2015, with Mr. Paredes at various times.

62.   If the complaint was concerning someone other than Mr. Figueroa, Mr. Paredes mentioned that he did not take any corrective action because he understood it was a joke.

63.   If the complaint was concerning Mr. Figueroa, Mr. Paredes did not take any corrective action after hearing the Plaintiff's complaints, and would tell the Plaintiff that he could not do anything with regards to Mr. Figueroa.

64.     At approximately early 2015, Mr. Figueroa started implementing a new rule that the sales representatives had to follow. Specifically, Mr. Figueroa changed the way sales representatives would be able to collect their commissions. Additionally, Mr. Figueroa ordered the sales representatives to fill out forms to allegedly collect information of the client.

65.     However, Mr. Figueroa only modified the change of collecting commissions to certain sales representatives of an older age, but did not apply said changes to younger sales representatives.

66.     Additionally, Mr. Figueroa did not order the younger sales representatives to fill out forms to collect client information.

67.     The Plaintiff understood that the forms to collect client information were in reality to collect information with regards to the sales representative.

68.     The Plaintiff was feeling discriminated and felt that Mr. Figueroa continued to create a hostile work environment.

69.     The Plaintiff verbally complained again to Mr. Paredes and demanded that he tell Mr. Figueroa that he wanted to hold meeting with him in order to voice his complaints with regards to the changes.

70.     Mr. Paredes merely told the Plaintiff that he could not tell Mr. Figueroa that he should hold a meeting about the changes, because the Plaintiff had to follow Mr. Figueroa's orders.

71.     Because of Mr. Paredes refusal to communicate with Mr. Figueroa, the Plaintiff prepared a letter on May 3, 2015, directed to Mr. Paredes and Mr. Figueroa

explaining all the discriminatory actions Plaintiff has suffered and the hostile work environment the Plaintiff has been enduring.

72.     Mr. Figueroa answered the Plaintiff's letter on May 8th. 2015, falsely alleging that he had no idea of what was going on.

73.     The Plaintiff was furious that Mr. Figueroa feigned ignorance on his letter, and again complained to Mr. Paredes and demanded that a meeting be held between the Plaintiff and Mr. Figueroa.

74.     Mr. Paredes told the Plaintiff that he approached Mr. Figueroa, informing him that the Plaintiff had requested a meeting, but that Mr. Figueroa ignored Mr. Paredes requests. Mr. Paredes told the Plaintiff that he could not do anything about Mr. Figueroa.

75.     The Plaintiff felt that he had no other choice than to resign from CDM. This resignation was forced and involuntary.

76.     On June 26th, 2015, the Plaintiff sends a letter to Mr. Figueroa and other officials of CDM, explaining all the before mentioned facts. In his letter he told the officials of CDM that his resignation was involuntary because he was subjected to discriminatory actions and a hostile work environment.

77.     On July 1st, 2015, Mr. Figueroa again falsely alleges that he had no idea of any of the Plaintiff's complaints. Mr. Figueroa also indicated in his letter that he wished that the Plaintiff would reconsider his resignation. Mr. Figueroa's request for reconsideration was false and futile at the time, when the reality was that Mr. Figueroa knew for years of the actual discrimination and hostile work environment that he incurred against the Plaintiff.

78.     On July 2, 2015, the Plaintiff received Mr. Figueroa's letter and was ordered and obligated to write a response letter to Mr. Figueroa's July 1st, 2015 letter. The Plaintiff

requested that he take time to read the letter and write a response in due time after carefully reading its contents. Nonetheless, the Plaintiff was ordered and told that he had to write a response on that same day. Plaintiff thus wrote a short statement stating that his decision to resign involuntarily still stood.

79.    Over the course of Plaintiff's twenty two (22) years of employment, the Plaintiff was not reprimanded for any actions.

80.    The Plaintiff was never suspended from his employment.

81.    Plaintiff always fulfilled and excelled at his duties, and such was reflected in all of Plaintiff's sales and work performance.

82.    After the Plaintiff's illegal constructive dismissal, CDM promoted a Mrs. Jimenez, who was the younger sales representative, without any justification. Mrs. Jimenez was substantially younger substandard employee than the Plaintiff.

83.    After Plaintiff's involuntary resignation, Plaintiff filed a claim for unemployment benefits before the Puerto Rico Department of Labor Agency.

84.    In addition, Plaintiff filed his charge of discrimination based on Age.

85.    During the unemployment benefits administrative hearing, the Arbitrator adjudicated and approved the Plaintiff's Claim, determining that the Plaintiff was a beneficiary of unemployment benefits because his termination was wrongful, due to the fact that his resignation was involuntary.

86.    The Defendants appealed the decision of the Arbitrator and were duly represented by legal counsel.

87.    An appeal hearing was held, and the Secretary of the Department of Labor confirmed the decision made by the Arbitrator. The Department of Labor understood that

the Plaintiff's termination was wrongful and the Plaintiff's resignation was involuntary due to the fact that he was suffering a hostile workplace environment because of constant discrimination against him based on his age.

88.   Mr. Figueroa and Mrs. Jimenez are agents who are duly authorized by CDM, who committed a discriminatory act in the course and scope of their agency relationship, thus imposing liability to CDM.

89.   CDM had knowledge of Mr. Figueroa and Mrs. Jimenez's arbitrary and discriminatory actions. CDM did not take any proper action to rectify and/or avoid the discriminatory actions incurred by Mr. Figueroa and Mrs. Jimenez. CDM allowed Mr. Figueroa and Mrs. Jimenez to discriminate against the Plaintiff by creating a hostile work environment and discriminating against the Plaintiff because of his age.

90.   Company ABC was the parent company or an affiliated company of CDM. Company ABC had knowledge of Mr. Figueroa and Mrs. Jimenez's arbitrary and discriminatory actions. Company ABC did not take any proper action to rectify and/or avoid the discriminatory actions incurred by Mr. Figueroa and Mrs. Jimenez. Company ABC allowed Mr. Figueroa and Mrs. Jimenez to discriminate against the Plaintiff by creating a hostile work environment and discriminating against the Plaintiff because of his age.

91.   John & Jane Doe had knowledge of Mr. Figueroa and Mrs. Jimenez's arbitrary and discriminatory actions. John & Jane Doe did not take any proper action to rectify and/or avoid the discriminatory actions incurred by Mr. Figueroa and Mrs. Jimenez. John & Jane Doe allowed Mr. Figueroa and Mrs. Jimenez to discriminate against the Plaintiff by creating a hostile work environment and discriminating against the Plaintiff because of his age.

92.     At the time of these discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of CDM, specifically to cover said discriminatory claims. Said insurance policy was in force at the time of the discriminatory incidents.

93.     Ever since Plaintiff was dismissed, Plaintiff has suffered economic losses and deprivation of his salary. Plaintiff has lost sleep and rest, felt humiliated and discriminated, and has been at loss of his peace of mind and emotional stability.

94.     As up to this date, Plaintiff has not been able to obtain a job in spite of his endeavor to seek employment.

95.     The Plaintiff has no reasonably prospect of obtaining comparable alternative employment because of his age.

96.     The Defendants committed a discriminatory action against the Plaintiff, creating hostile work environments, by discriminating the Plaintiff because of his age, which eventually led to the illegal constructive discharge of the Plaintiff and rewarding a substantially younger and substandard employee without any regards to his performance, qualifications or experience with the company.

97.     The Defendants are liable for all the Plaintiff's damages.

### FIRST CAUSE OF ACTION

### DISCRIMINATION BASED ON AGE

98.     Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

99.     Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's age.

100.    At the moment that the Defendants' incurred in the discriminatory conduct, the Plaintiff was performing his job well enough to meet the Defendants' legitimate expectations.

101.    Defendants' conduct against the Plaintiff constitutes discrimination on the basis of age in violation of ADEA, 29 USC sec. 621 et seq., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

102.    As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of his means of livelihood, has suffered economic losses and has been emotionally injured.

103.    As a result of Defendants' discriminatory practices, Plaintiff lost the salary he was entitled to.

104.    Defendants' are liable to Plaintiff for the back pay he was entitled had he maintained his position pursuant to ADEA, 29 USCA sec. 626 (b).

105.    Plaintiffs' last annual salary was approximately $43,000.00.

106.    Defendants' are liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

107.    Pursuant to ADEA, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiffs' rights protected under federal law. Plaintiff is thus entitled to double and liquidated damages.

This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

108.   In the alternative, an adequate remedy under PR Law No. 100, Defendants' are liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiffs' rights.

109.   Plaintiff's dismissal was the culmination of Defendants' discriminatory practice against the Plaintiff because of his age.

110.   Defendants' are liable to Plaintiff under this cause of action, pursuant to ADEA, PR Law 100 and the Constitution of the Commonwealth of Puerto Rico, in excess of three million dollars ($3,000,000.00).

111.   In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against him.

112.   In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result thereof, Defendants' are liable for double compensatory and statutory damages. These damages are estimated at no less than three million dollars ($3,000,000.00), which times two equal six million dollars ($6,000,000.00).

## SECOND CAUSE OF ACTION

### WRONGFUL TERMINATION / UNJUST DISMISSAL

113.   Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

114.   Defendants' actions constitute a termination of employment without just cause.

115.    Defendants' are liable to Plaintiff pursuant to P.R. Law No. 80, 29 LPRA sec. 185a *et seq*, for an amount equal to six (6) months of salary plus benefits, as defined in the law, and sixty six (66) additional weeks of compensation, based on their highest earning in any thirty day period within the three years prior to the employee's dismissal. This amount to a severance pay of approximately eighty two thousand five hundred dollars ($82,500.00).

### THIRD CAUSE OF ACTION

### TORTS DAMAGES

116.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

117.    Defendants' actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

118.    Defendants are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

119.    Mr. Figueroa's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

120.    Mr. Figueroa is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

121.    Mrs. Jimenez's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

122.    Mrs. Jimenez is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

123.    John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

124.    John & Jane Doe's are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

125.    Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

126.    Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

127.    Mr. Figueroa and Mrs. Jimenez's actions as officers and/or employees of the Defendant CDM constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

128.    Therefore, Defendant CDM is vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

129.    CDM's actions as affiliated company of Company ABC constitute an act or omission which caused damages to Plaintiff. Said act or omission was incurred due to fault or negligence.

130.    Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

131.    All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

132.   As a result thereof, Defendants are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

### FOURTH CAUSE OF ACTION

### YESENELYS FAJARDO-FIGUEROA'S TORTS DAMAGES

133.   Mrs. Fajardo re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

134.   Defendants' actions constitute an act or omission which caused damage to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

135.   Defendants are liable to Mrs. Fajardo pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

136.   Mr. Figueroa's actions constitute an act or omission which caused damage to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

137.   Mr. Figueroa is liable to Mrs. Fajardo pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

138.   Mrs. Jimenez's actions constitute an act or omission which caused damage to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

139.   Mrs. Jimenez is liable to Mrs. Fajardo pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

140.   John & Jane Doe's actions constitute an act or omission which caused damage to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

141.   John & Jane Doe's are liable to Mrs. Fajardo pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

142.   Company ABC's actions constitute an act or omission which caused damage to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

143.   Company ABC is liable to Mrs. Fajardo pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

144.   Mr. Figueroa and Mrs. Jimenez's actions as officers and/or employees of the Defendant CDM constitute an act or omission which caused damages to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

145.   Therefore, Defendant CDM is vicariously liable for damages caused by their officers and/or employees in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

146.   CDM's actions as affiliated company of Company ABC constitute an act or omission which caused damages to Mrs. Fajardo. Said act or omission was incurred due to fault or negligence.

147.   Therefore, Company ABC is vicariously liable for damages caused by the Defendants' in their service pursuant to Article 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5142.

148.   All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

149.   As a result thereof, Defendants are liable to Mrs. Fajardo for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico,

31 LPRA sec. 5141, 5142. These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

## FIFTH CAUSE OF ACTION

### INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE

150.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

151.    Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

## FIFTH CAUSE OF ACTION

### ATTORNEYS FEES AND PREJUDGMENT INTEREST

152.    Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

153.    Defendants' are liable to Plaintiff for attorney's fees and costs under ADEA, 29 USC sec. 216 (b), and Title VII, 42 U.S.C. sec. 2000e-5(k) and 42 USC sec. 1988.

154.    Defendants' are also liable to Plaintiff for attorney's fees under PR Law 100 and Law 80.

155.    Defendants' are liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

### DEMAND FOR JURY TRIAL

156.     Plaintiff demand a trial by jury as to all claims and issues alleged herein.

**PRAYER**

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiff's Complaint against Defendants. The Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based on the following: Discrimination based on Age pursuant to the Age Discrimination in Employment Act, 29 USC sec. 621 *et seq*., Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq*., and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a *et seq*.;  and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

2. Granting Mrs. Fajardo's Complaint against Defendants. The Court should grant Mrs. Fajardo's complaint and find that the Defendants are liable to Mrs. Fajardo based on the following: Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

3. An order directing Defendants' to reinstate Plaintiff to her former position and to cease and desist of any further discriminatory conduct on the basis of Age.

4. Awarding Plaintiff back pay, together with interest, for the period that Plaintiff was deprived of her salary, as it was awarded to other employees in her previous position.

5. Awarding Plaintiff punitive and liquidated damages equal to twice the back pay and fringe benefits lost by the Plaintiff.

6. Awarding Plaintiff lost benefits, both past and future.

7. Awarding Plaintiff the amounts before mentioned in the Complaint, including the double compensatory damages.

8. Awarding Plaintiff severance pay pursuant to PR Law No. 80.

9. Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

10. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico, on this 18th day of January, 2016.

_**S/VICTOR M. RIVERA-RIOS**_
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
RIVERA COLÓN, RIVERA TORRES & RIOS BERLY, PSC
1502 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com